UNITED STATES of America

v.

Ivie Wily HIGGINS, a/k/a Harry Smith,
Appellant.

No. 71–1092.

United States Court of Appeals,
Third Circuit.

Submitted Nov. 11, 1971.

Decided March 28, 1972.

H. David Rothman, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Samuel J. Orr, III, Pittsburgh, Pa., for appellee.

Before VAN DUSEN, JAMES ROSEN, Circuit Judges, and BECKER, District Judge.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

The Pittsburgh National Bank was the target of bank robberies on both July 15, 1968 and October 4, 1968. Ivie Higgins was indicted under 18 U.S.C. § 2113(a) and § 2113(d) for the October 4 robbery and he entered a guilty plea. He does not attack this guilty plea. Higgins was also indicted for the July 15 bank robbery, for which he was convicted on December 18, 1970. He now appeals this conviction.

About 11 a. m., on July 15, a masked robber wearing a hat and sunglasses entered the Pittsburgh National Bank.[1] The armed robber forced several of the tellers to put money in a bag he was carrying. He then located Philip Lawrence, the bank manager, and with his gun pointed at Lawrence, forced Lawrence to give him the key to the bank vault. The robber emptied the vault[2] and then told all the bank employees to lay down on the floor as he left. Mr. Lawrence did not comply with the robber's order, but just kneeled. Consequently, after the robber left, Lawrence managed to get to the door quickly enough to see the robber get into a 1965 or 1966 green Chevrolet and drive off. Mr. Lawrence was able to copy down the first three numbers of the license plate of the get-away car.

At the time that the robber left the bank, John DeFazio was seated in his car across the street from the bank. DeFazio, who was about thirty or forty feet from the robber, focused his attention on the robber because he thought it unusual to see a masked man wearing a hat and sunglasses and carrying a bag. During the minute to a minute and a half DeFazio had to observe the robber, he had "mostly a profile view," but also saw him "directly in front" for a few seconds.

DeFazio watched the robber remove his mask and enter an automobile. He then followed the vehicle long enough to obtain the license number. The plate was subsequently linked to a green 1966 Chevrolet which had been stolen the

[1.] Surveillance photos taken by the Bank's electronic camera and introduced by the government as Exhibits 1–7.

[2.] It was stipulated that the robber took a total of $5059.00. Tr. p. 16.

morning of the robbery. Mr. Lawrence later identified this Chevrolet as the get-away car.

About one hour after the bank robbery, DeFazio gave the Federal Bureau of Investigation a description of the robber. According to his statement, the robber was 5' 8" tall, 185 pounds and very stocky. He was a light complected Negro, with the makings of a beard and a mustache. After giving his statement DeFazio was shown twelve or thirteen mug shots selected by the police or the F.B.I. on the basis of DeFazio's description. He did not make an identification of the robber.

In October or November, DeFazio was asked by the F.B.I. to look at some photographs of additional suspects.[3] He was shown seven mug shots. All were of the same type, showing one frontal view and one profile view. They were also the same size. All of the suspects were similarly dressed and none appeared more than once among the photos. DeFazio selected Higgins' mug shot, telling the F.B.I. agent, "I could swear that this is him [the robber]." Higgins' appearance in the mug shots matched DeFazio's earlier description of the robber.

DeFazio was then shown a photograph of a six man lineup which occurred on October 4. All of the suspects appearing in this photograph were attired in street clothes. There is no claim that the lineup photo, itself, directed DeFazio's attention at Higgins. DeFazio once more chose Higgins. After the identification, the F.B.I. agent told DeFazio, "we think this is the man, too."

At the time DeFazio identified Higgins from the mug shots and the lineup photograph, Higgins was being held in police custody for the October 4th robbery of the Pittsburgh National Bank. Higgins' lawyer was not present when DeFazio made his identifications, although Higgins was represented at the live October 4th lineup.

On November 20, Higgins participated in a live five man lineup at which represented by his lawyer,[4] DeFazio again identified Higgins as the robber. On Higgins' application the trial judge held a suppression hearing at which DeFazio testified that he had not been influenced by his prior identifications of the appellant. The application was denied. Appellant then moved for reconsideration of his motion, claiming that (1) the photographic identification by DeFazio outside the presence of counsel and after Higgins was in custody violated Higgins' right to counsel; and that (2) the F.B.I. agent's statement was unduly suggestive, violating Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968). The judge rejected both claims and denied the motion.

At the trial, DeFazio made an in-court identification of Higgins. To supplement this, the government introduced into evidence a photograph of the October 4th lineup. DeFazio had previously selected Higgins from this photograph. The government also introduced photographs of the November 20 lineup at which DeFazio had seen Higgins in person and had identified him. The seven mug shots from which DeFazio had initially selected Higgins came into evidence as defendant's exhibits during cross-examination of DeFazio.[5]

At the instruction stage of the trial, Higgins requested the judge to give certain specific charges as to the sugges-

---

3. These pictures were shown to DeFazio either in the middle of October or in the middle of November (SH, p. 62, Tr. p. 111).

4. Two factors explain the delay in arranging a live lineup. First, Higgins was not arrested until October 4, 1968. Second, the appellant was hospitalized for a pe-

riod of time after his arrest. (Appellant's Brief, p. 6a).

5. Higgins cannot properly object that the jury received information that the defense chose to introduce in evidence. United States v. McQueen et al., 458 F.2d 1049, p. 1051 (3d Cir. Filed February 8, 1972).

tive impact of DeFazio's exposure to the F.B.I. agent's statement and to the line-up and mug shot photographs. The judge rejected the charges proposed by the appellant, but did give an instruction on suggestion.

In addition to DeFazio, Margaret Lynch and Willie Pringle also testified as government witnesses. They stated that they saw Higgins on the day of the robbery with a gun and with a bag containing more than $4000. in cash. Defendant made a timely objection to the testimony and requested specific instructions directing the jury to disregard it. The requested instructions were denied, but the judge did tell the jury that Higgins' possession of a gun and a bag of money was insufficient in itself to establish guilt under 18 U.S.C. § 2113.

The jury found the appellant guilty on both counts of the indictment. Higgins, sentenced by the judge to three years imprisonment,[6] now appeals on five grounds.

■ Appellant's first ground is that his right to counsel was violated by police use of photographs as an investigative technique while Higgins was in custody for the October 4, 1968 robbery. Consequently, he claims, DeFazio's prior out-of-court identifications were improperly admitted at trial, citing United States v. Zeiler (*Zeiler I*), 427 F.2d 1305 (3d Cir. 1970). This fails, however, because the photographic identifications Higgins challenges occurred in 1968 and *Zeiler* was not decided until June 1970. We hold that the decision in *Zeiler I, supra,* requiring counsel at photographic confrontations of defendants who are in custody should not be applied retroactively. We therefore apply the holding prospectively from June 5, 1970, the date of the *Zeiler I* decision.

The considerations which impelled the United States Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) to deny retroactive effect to the United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), rules are equally cogent in this case. Prior to *Zeiler I,* the weight of authority was to the effect that an accused was not entitled to counsel while his photographs were being shown to witnesses to a crime. Indeed, this court held that preindictment photographic identifications were not a "critical stage" of the prosecution at which the presence of counsel would be necessary to protect defendant's rights to a fair trial. United States v. Conway, 415 F.2d 158, 162 (3 Cir. 1969), cert. denied 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970). Law enforcement authorities fairly relied on the pre-*Zeiler* rule and retroactive application of *Zeiler I* "would seriously disrupt the administration of our criminal laws." *Stovall,* 388 U.S. p. 300, 87 S.Ct. p. 1971, citing Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Our holding that *Zeiler* applies only prospectively does not, of course, leave a pre-*Zeiler* defendant helpless in the face of pretrial photographic identification. As stated in Simmons v. United States, *supra:*

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement . . . *The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.*" (emphasis supplied)

The record discloses that Higgins did utilize the opportunity to extensively cross-examine government witnesses in an attempt to prove mistaken identification.

The appellant's second ground is that DeFazio's pretrial identifications were so "unnecessarily suggestive and condu-

---

6. Higgins was given the right to parole at the Parole Board's discretion in accordance with 18 U.S.C. § 4208(a) (2).

cive to misidentification as to deny him due process of law" under *Simmons, supra,* 390 U.S. p. 381, 88 S.Ct. 967. He alleges two sources of suggestion to support this claim: first, "appellant appeared in both a photograph of a lineup and the lineup;" second, the F.B.I. agent's remark to DeFazio made after DeFazio's identification contained "verbal suggestion." [7]

The appellant argues that because of the alleged suggestiveness of these incidents, DeFazio should not have been allowed to make an in-court identification of Higgins. He further claims that DeFazio's prior out-of-court identification should not have been admitted.

We learn from *Simmons* that

convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (p. 384, 88 S.Ct. p. 971)

Whether "the identification procedure was so unduly prejudicial as fatally to taint his conviction . . . must be evaluated in light of the totality of surrounding circumstances." p. 383, 88 S. Ct. p. 970.

■ We have carefully examined the transcript of the suppression hearing, the trial record and the conditions surrounding DeFazio's photographic identification. We are satisfied that in the circumstances of this case there was "little chance that the procedure utilized led to misidentification" of Higgins. *Id.* p. 385, 88 S.Ct. p. 971. At the suppression hearing, the government established by clear and convincing evidence that DeFazio's ability to identify Higgins was based on his own direct observation of the robber and did not arise from any suggestiveness during the pretrial photographic identification. United States v. Wade, *supra,* Coleman v. Alabama,

399 U.S. 1, 6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969). As the product of an "independent source" DeFazio's in-court identification was properly permitted by the trial judge. United States v. Zeiler, (*Zeiler II*), 447 F.2d 993 (3d Cir. 1971).

■ In reaching this conclusion, we rely upon seven factors spelled out by the Supreme Court in *Wade,* and discussed by Chief Judge Seitz in *Zeiler II*: (1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification. These factors, though articulated in a lineup case, "have an equally important bearing" in photographic identification cases, *Zeiler II,* p. 995. See also *Simmons* and *Coleman.*

In arguing for reversal the appellant relies exclusively on the first criteria. Admittedly, the manner of the pretrial identification is a very important factor, but the question of suggestiveness does not turn solely upon it. It is the "totality of surrounding circumstances" which govern. In the instant case, we find it helpful to first examine the other six factors in order to obtain the proper perspective of this "totality." We will then return to discuss the appellant's argument more closely.

With respect to the second criteria, we find that DeFazio was able to observe the robber under circumstances favorable to clear perception. The bank robbery occurred in the morning. De Fazio was only thirty or forty feet from the robber. He had a full minute to a minute and a half to observe him. The

7. Appellant's Brief, pp. 18–19.

robber was not wearing a mask at the time. Finally, DeFazio saw him both in profile and in full face. Passing to the third factor, we note that DeFazio gave a complete description of the robber to the F.B.I. shortly after the robbery. There were no material or substantial discrepancies between DeFazio's statement and Higgins' actual description.

The fourth, and sixth criteria can be discussed together. DeFazio was shown an array of 12 or 13 photographs the day of the robbery, but did not select the robber from among them. There is no claim made .that Higgins was among the suspects shown DeFazio. Therefore, there is no issue of non-identification. There is no issue of misidentification, either, since DeFazio did not choose anyone from these pictures.

Fifth, DeFazio made two photographic identifications of Higgins before he made his in-court identification. We conclude that this procedure does not suggest any prejudice.

The seventh factor is the lapse of time between the alleged act and the out-of-court identification. There was no undue delay by the police in arranging a photographic identification. They showed DeFazio an array of mug shots on the same day as the robbery. DeFazio did not identify the robber from the pictures. Three or four months later, DeFazio was shown other pictures and made the identification. This was not prejudicial and is clearly distinguishable from the three and a half year delay in *Zeiler I*.

We now return to the first criteria used to measure suggestiveness: the manner in which the pretrial identification was conducted. As our discussion of the second and third criteria has disclosed, DeFazio had a good opportunity to observe Higgins and gave an accurate description of him before he was shown any photographs. His initial selection of Higgins was the product of an independent source: his own observation and recollection.

Higgins makes two *Simmons* claims. First, he says that upon seeing Higgins in the live lineup, DeFazio had his attention focused on Higgins in an unduly suggestive way, because Higgins appeared in both the photographic lineup and the live lineup. Second, he alleges undue suggestion arose from the F.B.I. agent's statement to DeFazio. Both of these contentions fall for the same reason. These events occurred after the initial mug shot identification, which was the product of an independent source. They came too late to be unduly suggestive to DeFazio. Cf. United States v. Conway, *supra*, 415 F.2d p. 164.

On the basis of the "totality" test, we conclude that the photographic identification procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons*. Consequently, the court did not deny Higgins due process when it allowed DeFazio to make an in-court identification, *Simmons*, or to testify as to prior out-of-court identifications. United States v. Hall, 437 F.2d 248, 249 (3d Cir. 1971), cert. denied sub nom, Knight v. United States, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).

██ Higgins' third ground for appeal is that the photograph of the October 4th lineup was so prejudicial that it denied him due process. More specifically, he argues that the lineup was improper because it did not simulate the actual appearance of the robber at the July 15th robbery. This contention fails because *Simmons* does not require such a simulation. United States v. Hall, *supra*, p. 249.

██ Higgins' fourth ground is that the judge did not give a "very strong charge" [8] on the possible prejudicial influence on DeFazio arising from his pre November 20 identification of Higgins and from the F.B.I. agent's remark. This contention is without merit. The charge given by the trial judge made the

---

8. Appellant's Brief, p. 19.

jury sufficiently aware of the possibility of suggestion. In accordance with *Simmons* he properly directed the jury to ignore DeFazio's testimony unless it found "beyond a reasonable doubt that the identification of the defendant was not the product of suggestion, which in any way affected the ability of the witness, DeFazio, to make a positive identification . . . ." [9]

■ Lastly, Higgins claims that the court improperly admitted Lynch and Pringle's testimony that on the day the armed robbery occurred they saw appellant with a gun and more than $4000. in cash in bills of large denomination. He also argues that the trial court erred in not instructing the jury to ignore this alleged improper testimony. In support of this position, he contends that the testimony was collateral because it did not link the gun or the money to the robbery. He also claims that the introduction of their testimony compelled him to incriminate himself in a numbers racket in order to rebut the robbery charge. This, he says, violated his Fifth Amendment right against self-incrimination.

■ The claim that the judge erred in admitting the ostensibly collateral evidence is without substance. A trial judge is given broad discretion in balancing the probative value of evidence against its possible prejudicial effect. United States v. American Radiator & Standard Sanitary Corp., 433 F.2d 174 (3d Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 928, 28 L.Ed.2d 231 (1971), United States v. Dono, 428 F.2d 204 (2d Cir. 1970). The fact that immediately after the robbery Higgins was in possession of a gun and of a large sum of high denomination bills was relevant and probative evidence.[10] As such, it was properly admitted. United States v. Conway, *supra*, 415 F.2d p. 165, United States v. McKenzie, 414 F.2d 808 (3d Cir. 1969) cert. denied, Anthony v. United States, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970), United States v. Jackson, 403 F.2d 647 (3d Cir. 1968), cert. denied, Barefield v. United States, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969).

■ The Fifth Amendment gives a defendant the right to remain silent. That right can be waived and the waiver is effective even if it results from a defendant's "strategic consideration of how to persuade a jury of his innocence." United States v. Weber, 437 F. 2d 327, 335 (3d Cir. 1970), cert. denied, 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971). This was made clear in Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968), where the court said:

> A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.

We have carefully examined the record and find that there was no harmful or prejudicial error substantially affecting Higgins' rights. F.R.Crim.P., Rule 52(a).

Accordingly, the judgment of conviction will be affirmed.

---

9. Tr. 326. This instruction was explained two or three times by the judge. Elsewhere, he said, "If you find his [DeFazio's] identification of a defendant is the product of a prompting and suggestion on the part of the police, then his testimony is valueless." Tr. 327.

10. The amount taken from the bank was $5059.00. Pringle testified that Lynch and he had been able to count as far as $4000. when they inspected the bag Higgins was carrying and that they left some money uncounted. These facts together with the other evidence presented in this case, permitted the jury to infer that the money Higgins was carrying on July 15 had been stolen earlier that day from the bank.