**UNITED STATES of America**

v.

**Joseph E. BOSTIC, Jr. and Alton Henry Bradby.**

**Crim. No. 73-72.**

United States District Court, E. D. Pennsylvania.

April 13, 1973.

As Amended June 12, 1973.

See also, D. C. 360 F.Supp. 1305.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Shaljian, Cammarata & O'Connor, Edward T. O'Connor, Jr., Jersey City, N. J., Nicholas J. Nastasi, Philadelphia, Pa., for defendants.

MEMORANDUM OPINION

EDWARD R. BECKER, District Judge.

Defendants were convicted of bank robbery. Before us are their motions

for a new trial and judgment of acquittal in which they have raised essentially two points: sufficiency of the evidence (defendants contend that there was insufficient evidence to send the case to the jury, and, alternatively, that the verdict is against the weight of the evidence, requiring a new trial); and *second,* that certain allegedly suggestive out-of-court photographic identifications should have been suppressed. We have carefully reviewed the motions, the memoranda of law submitted thereon by the defense and the government, and our notes of the trial.[1] For the reasons which follow, the motions will be denied.

I. *Sufficiency of the Evidence*

The evidence against the defendants was extremely strong. The robbery of the Conshohocken Savings & Loan Association occurred on October 5, 1972, at about 2:50 p. m., shortly before the bank closed for the day. Two young women, Elaine Allen and Ethel May Walker, testified that they had been with the defendants since the evening before the robbery and they related in detail the defendants' acts and statements during that period. The young women (who are sisters) each testified that they had spent the evening and early morning hours drinking in various establishments with the two defendants and that they then spent several hours with them at the George Washington Motor Lodge. According to their testimony, the following occurred upon leaving the motel. Bostic announced plans to rob the bank which was nearby. The four then drove to the parking lot of the shopping center where the bank was located. Bostic first asked the girls to go inside on the pretext of inquiring about a transfer of deposits, so that it could be determined whether a male manager was present, but he changed his mind. He thereupon took a knife, handed Bradby a gun, and walked with Bradby towards the bank. When Bostic and Bradby returned they had a large amount of cash with them,

---

1. The notes of testimony were not ordered and have not been transcribed.

and they told the girls to drive off while they lay on the floor.

Allen and Walker's testimony that the foursome had stayed at the George Washington Motor Lodge was corroborated by the motel register and by Karl Lilja, an FBI handwriting expert, who identified (as against known exemplars) the signature on the register as that of defendant Bostic. Even the license number of Bostic's car, conceded to be that of Bostic's mother, was listed on the register. Their testimony was also corroborated by one Agnes Archibald, a clerk in the drug store next door to the bank with respect to an incident which occurred in the parking lot just before the robbery. Mrs. Archibald testified about an encounter with four black people in a blue car, and a discussion with one of them as to whether they were parked in her parking place. Although all witnesses were sequestered, Mrs. Archibald's testimony precisely matched that of Allen and Walker on this point. We permitted defense counsel broad leeway on cross examination to attack the credibility of Allen and Walker, even to the point of permitting inquiry into certain serious charges pending against them which had not resulted in conviction. Nonetheless, the jury apparently credited their testimony.

In addition to the foregoing, there were several in-court identifications. Sharon Johnson, one of the two tellers in the bank at the time of the robbery, made an in-court identification of Bostic as the man who put a knife to the throat of the customer standing at her window[2] and of Bradby as the man who took the money at gunpoint from the other teller. The other teller, Geraldine Kilpatric, made an in-court identification of Bradby as the man who pointed the gun at her. Kathleen O'Connor, a young woman who was outside the bank waiting for David Rawls, a customer, to leave the bank, identified Bostic in court as a man she saw in the bank at about the time of the robbery, indeed, who had stared at her from inside the bank (prior to the robbery) and whom she saw leaving the bank a short time later. David Rawls, who had been in the bank when the two men entered but left before the robbery and had thereupon joined Miss O'Connor outside, made an in-court identification of Bostic as the one who stood behind him in line. According to Rawls, the other man who had entered with Bostic but whom he could not identify, stood behind Mr. Granese.

Defense counsel elicited on cross examination that Sharon Johnson had failed to identify Bostic from an out-of-court photographic spread and that Rawls had picked out a photograph of someone other than Bostic. Moreover, when asked in court whether Bradby was the one who pointed the gun at her, Mrs. Kilpatric said that she thought so but was not sure. However, we gave the identification charge approved in United States v. Barber, 442 F.2d 517 (3d Cir. 1971),[3] so that the jury was aware that the testimony of witnesses Johnson, Rawls and Kilpatric as to identification had to be "received with caution and scrutinized with care." We note that although Miss O'Connor and Mrs. Kilpatric had made an out-of-court photospread identification consistent with their in-court identification testimony, they testified only that they identified the "bank robber" at the out-of-court identification; the fact that the out-of-court identifications were of the defendants was not elicited by the government.[4]

2. Neil Granese, the customer, confirmed that the knife had been put to his throat (from behind) but was unable to make any identification.

3. No exception was taken to that or any other aspect of the charge.

4. The photograph of Bostic was taken the day of the arrest, so that the problem addressed in United States v. Hines, 470 F.2d 225 (3d Cir. 1972) was not present. The record does not reflect any specific reference to photographs of defendants taken before their arrest. We offered

In view of the foregoing summary, the contention of both defendants that the evidence did not sustain the conviction, and that the verdict is against the weight of the evidence is plainly lacking in merit. The evidence, viewed in the proper light at this stage, *see* United States v. Dukow, 465 F.2d 688 (3d Cir. 1972), is more than adequate to sustain the verdict.[5] *See, e. g.,* United States v. McQueen, 458 F.2d 1049 (3d Cir. 1972), sustaining a conviction on the basis of generally similar evidence.

## II. The Out-Of-Court Photographic Identifications

As we have noted, the government did not establish at trial that the photos chosen at the out-of-court identification were the defendants' photos. Thus, the principal claim of prejudice must stem from the notion that the in-court identifications were the product of impermissibly suggestive out-of-court photographic identifications. At a pretrial suppression hearing, we reviewed the photo-spreads shown to the prospective witnesses and heard testimony as to the manner in which the photographs were exhibited. We found that the agents who showed the photographs did not impart any improper suggestion. We are also satisfied that the photo-spreads themselves, depicting a group of black males, could not be found by any test to so impermissibly and unnecessarily suggest Bostic or Bradby as the perpetrators of the crime as to give rise to a very substantial likelihood of misidentification.[6]

All of the photographs were of men of similar age. Several types of complexion were present but there was more than one person of each shade. There was a photograph of someone who looked fairly like Bradby and one of someone looking fairly like Bostic and there were no photographs inconsistent with the general descriptions given by the eyewitnesses. While it is true that Bostic was the only one depicted with a scar on the left side of his forehead, we do not deem that fact to alter the result. *First,* in terms of the descriptions given by the witnesses and the testimony developed in court as to the bases for their identifications, Bostic's scar played little if any role.[7] *Second,* it is doubtless impossible

---

on several occasions to give the following cautionary instruction to the jury if counsel felt that the jury might possibly believe that police photographs of defendants taken prior to their arrest were among those shown:

There is proper concern about the witness's reference to the police photographs of the defendant. The police have many pictures of people. Simply because the police have a person's picture does not mean that he has ever committed a crime, before or since. So please understand that there is no connotation of guilt of any kind simply because some pictures of the defendant were in possession of the police.

However, counsel stated that they preferred, on strategic grounds, not to have us do so. In any event, under the *Hines* balancing test, the reference to police photos would have been proper. With exception of the limited references to out-of-court photographic identification by Kilpatric and O'Connor (see text), all other reference to photographic identification was elicited by defendants on cross-examination. Thus, the defendants cannot properly object that the jury received information that they chose to introduce in evidence. See United States v. McQueen, 458 F.2d 1049, 1051 (3d Cir. 1972).

5. While neither defendant took the stand, both offered alibi testimony to the effect that they were in New York at the time of the robbery. That testimony was fairly presented to the jury which rejected it. The testimony of the handwriting expert may have been most damaging to the defendants in this regard.

6. Although only Bradby has raised the point on post trial motions, Bostic joined in the pretrial suppression motion, and may conceivably raise the point in the event of an appeal. Accordingly, we address the pretrial identifications of both Bostic and Bradby in this discussion.

7. In terms of suggestiveness of the scar, our focus must be on Miss O'Connor, since neither Mrs. Johnson nor Mr. Rawls, who made in-court identifications

for the police or FBI to create a perfectly balanced photospread. How many photographs does a law enforcement agency at a given place and time possess of men in a certain age range and of certain skin color who also happen to have a prominent scar on their left foreheads?

The defendants' approach to the question is that any feature of a given photograph in a multi photo-spread [8] which distinguishes it from any other photograph justifies the elimination of that photograph from consideration; when only the defendant's photograph is left, the cry of "foul" is interposed. However, defendants misconceive the applicable law which is that: (1) the out-of-court identification procedures need be judged in the totality of the circumstances, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and (2) the standard against which the admissibility of out-of-court identifications is measured is whether there is a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In cases raising similar issues, the position akin to that of defendants has been rejected. In United States v. McQueen, supra, Judge Hastie rejected defendant's objection to a spread of eight photographs in which there were two prints each of two defendants and a third man but only single prints of each of the other five. In United States v. Abbate, 451 F.2d 990 (2nd Cir. 1971), the FBI agents, knowing that defendant had been described as having a pock marked face, did not include photographs of persons with pock marked faces other than defendant in a group of thirteen photographs shown to three eyewitnesses. However, the Court refused to hold that error was committed in admitting the testimony of the eyewitnesses. In United States ex rel. Johnson v. Dept. of Correctional Services, 461 F.2d 956 (2nd Cir. 1972), no violation of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), was found, although the defendant was the only one of five men in the photographic display who was wearing glasses. And, in United States v. Harrison, 460 F.2d 270 (2d Cir. 1972), the court rejected a Simmons claim to the effect that the defendants were the only ones in the group of photographs shown to witnesses that was a single front view photograph, whereas the others were all double view, i. e., full face and profile. In United States v. Fitzpatrick, 437 F.2d 19 (2d Cir. 1970), fifteen of the eighteen photographs were of men older than defendant, although witnesses had informed authorities that the suspect was a "clean cut American boy." However, three pictures did fit defendant's description, and the Simmons claim was rejected, as it was in United States v. Schoore, 449 F.2d 348 (9th Cir. 1971), where there were only two pictures of persons of defendant's nationality in the photospread. In Monteiro v. Picard, 443 F.2d 311, 312 (1st Cir. 1971), the court upheld a three-man lineup where the defendant was the only one in street clothes and noted that "[s]ome latitude must be allowed to the police at least in the absence of deliberate theatrics." Monteiro v. Picard, 443 F.2d at 312, quoting Cooper v. Picard, 428 F.2d 1351, 1352 (1st Cir. 1970). In United States v. Cunningham, 423 F.2d 1269, 1272 (4th Cir. 1970), fourteen photos were displayed; five were of one defendant, two of another and the only color photos were of the defendants. Finally, in

---

of Bostic, identified his photograph. As to them, the out-of-court identification can hardly be considered suggestive. Indeed, the fact that two eyewitnesses did not identify the photograph of Bostic with the scar is a factor that tends to negate the contention that the photographic display was suggestive. United States v. Cunningham, 423 F.2d 1269 (4th Cir. 1970); see United States v. McQueen, supra. Miss O'Connor testified that the salient factors in her identification were Bostic's facial features and his eyes, not the scar. Indeed, when she related the events to her father, an FBI agent later, she did not even mention the scar.

8. Some eight photographs were shown.

Searles v. Minn, 428 F.2d 1188 (8th Cir. 1970), the defendant's photograph was the only one shown with a bald head. However, in all of these cases, the *Simmons* claim was denied.

In this case we find the photograph spread to have been fundamentally fair. It was also far less objectionable than some of those upheld in the above cited cases.[9] Accordingly, the second ground of defendant's motions is also lacking in merit.

9. Since we found nothing impermissively suggestive about the out-of-court identification, it was not necessary to reach the question of independent basis for in-court identification. However, there was substantial evidence that each of the witnesses who identified the defendants in Court had independent bases for their identification. Each of these witnesses had ample opportunity to observe the defendants and testified as to a clear recollection of their builds, facial features, and particularly their eyes. Their original descriptions as to height and weight, complexion and features were reasonably detailed and reasonably accurate. Although there were some discrepancies inter se, the witnesses' descriptions, including descriptions of clothing, were also reasonably consistent. The pretrial identification was conducted in a fair manner, and, on balance, there was ample evidence that the criteria enunciated in United States v. Higgins, 458 F.2d 461 (3d Cir. 1972) were satisfied.