394 A.2d 453

**COMMONWEALTH of Pennsylvania**

v.

**Charles William SLAUGHTER, Appellant.**

Supreme Court of Pennsylvania.

Reargued Oct. 16, 1978.

Decided Nov. 18, 1978.

George J. D'Ambrosio, West Chester, for appellant.

Robert B. Lawler, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Charles W. Slaughter, was tried before a judge and jury and convicted of murder in the first degree on

March 31, 1975. Penalty was fixed by the jury at life imprisonment. Post-verdict motions were filed and an appeal followed to this Court. On April 28, 1978, an opinion affirming the judgment of sentence was filed, in which a majority of the court concluded that the issues raised had been waived. *Commonwealth v. Slaughter,* (J–195 of 1977, filed April 28, 1978). Following that decision, appellant filed a petition for reargument and/or reconsideration. The petition pointed out that a written brief which was not part of the record before us on appeal had been filed with the trial court. Based on our recent decisions in *Commonwealth v. Grace,* 473 Pa. 542, 375 A.2d 721 (1977); and *Commonwealth v. Perillo,* 474 Pa. 63, 376 A.2d 635 (1977), we ordered the case to be reargued.

The case was reargued on October 16, 1978. On reargument, appellant raises several issues in support of his contention that a new trial should be granted. We will address these issues in the following order:

(1) whether it was a violation of appellant's right to confrontation and inadmissible hearsay to permit the testimony of a certain police officer regarding an eyewitness identification of appellant;

(2) whether a statement allegedly made by appellant to police and admitted into evidence at his trial, should have been suppressed because obtained in violation of Pa.R. Cr.P. 130;

(3) whether an in-court identification of appellant was improperly tainted by an illegal pre-trial identification procedure;

(4) whether the trial court erroneously limited defense counsel's cross-examination of a certain prosecution witness; and

(5) whether the trial court erred in refusing to allow defense counsel to cross-examine a key prosecution witness regarding the witness's prior juvenile record.

Appellant argues that he was denied his constitutional right to confrontation, that the hearsay rule was violated, when, over defense objection, the prosecution was permitted

542

to question two police officers regarding identifications allegedly made of appellant by two eyewitnesses to the shooting for which he was on trial. The murder was witnessed by two individuals, Emanuel Crawford and Anthony Ragland. Only Ragland appeared in court and testified. Only Ragland's testimony was presented by the prosecution because it had been unable to locate Crawford in order to bring him to the trial.

As part of its case in chief, the prosecution called a police officer who had observed appellant at the time of appellant's arrival at the Police Administration Building following his arrest, and at the subsequent interrogation. The officer testified as to appellant's physical and mental condition at the time of his arrest and that he gave appellant so-called *Miranda* warnings. This officer was not asked, and did not testify on direct examination, regarding any out-of-court identifications of appellant.

Despite the fact that the officer had not been asked and had not testified on direct examination regarding any out-of-court identifications of appellant, on cross-examination, defense counsel elicited the following:

"Q. The person you had stated to the jury Lieutenant on your direct testimony is that—that you told Charles Slaughter that he had been identified as the, as you have said, the doer in this instance; is that correct?

A. Yes.

Q. Did you tell Mr. Slaughter who it was that had identified him as being the doer?

A. I told him he was identified by three people as having been the doer.

Q. Well not at that time he had been identified by two people.

A. Yes sir.

Q. You are sure of that?

A. Yes sir.

Q. You are sure it was not just one?

A. No sir.

Q. Were you personally present when anyone identified Charles Slaughter as the doer?

A. No. This information was relayed to me.

Q. Was the first person Emanuel Crawford?

A. I believe it was Emanuel Crawford, yes, sir.

Q. Is he here today?

A. No, I don't believe he is.

Q. Was he here yesterday?

A. I don't believe he was.

Q. Have you seen him here any day?

A. Not to my knowledge.

Q. Yet he was the first one that identified Charles Slaughter as being the doer in this case; is that correct?

A. That is correct." (N.T. p. 152–153.)

Counsel's apparent purpose for this line of questioning was to develop the theory that the two witnesses mentioned had given conflicting descriptions of the assailant. Because only one of these witnesses testified at trial, and identified appellant, counsel sought to argue to the jury that the other would not have identified appellant. In this vein, counsel questioned the officers extensively as to what, if any efforts, had been made by police to locate the missing witness. (The obvious inference counsel sought to convey to the jury was that the missing witness was not in court because his testimony would have contradicted the prosecution's key identification witness, and that, therefore, the police had made little or no effort to locate him).

On re-direct the prosecution was permitted, over defense objection, to ask the officer the following question:

"Lieutenant at the time that you saw the defendant two-ten in the morning, how many people had identified the defendant?"

To this, the officer replied,

"Two, Manuel Crawford and Anthony Ragland."

This response was hearsay, as contended by appellant. Nonetheless, the reception of that answer was harmless in view of the information elicited by defense counsel during

cross-examination. Defense counsel himself had revealed that appellant had been identified by two people, one of whom was Manuel Crawford. Although defense counsel's cross-examination did not refer to Anthony Ragland, Ragland identified appellant at trial and was subjected to cross-examination by defense counsel as to that identification. Under these circumstances, any error was harmless beyond a reasonable doubt.

Nor did the reference to these identifications contained in the direct examination of another police officer subsequently called by the prosecution, add any prejudicial information not already brought out by defense counsel's questions. In fact, the subsequent officer did not testify that appellant had been identified by the witnesses. He simply stated that while he was on duty on the night of appellant's arrest, he interviewed Emanuel Crawford, and that he reduced that interview to writing. He did not testify that Crawford identified appellant as the shooter. On re-direct, the second officer was asked,

"Did Emanuel Crawford make an identification of the man who shot Marvin Wyatt?"

Over defense counsel's objection, the officer responded,
"Yes, he did."

No further questions were asked of this officer either by the prosecution or by the defense. Clearly, this re-direct testimony, like that of the first officer, added nothing which had not already been revealed by defense counsel's questions. Its admission was therefore harmless beyond a reasonable doubt.

 Appellant also argues that he should be granted a new trial because a statement allegedly given by appellant to police after his arrest should have been suppressed as having been obtained in violation of Pa.R.Cr.P. 130's requirement that an accused be arraigned "without unnecessary delay" following arrest. That contention, however, has been waived because it was not raised in appellant's pre-trial motion to suppress, nor at trial, but was raised for the first

time in post-verdict motions. *Commonwealth v. Newsome,* 462 Pa. 106, 337 A.2d 904 (1975).

■ We turn then to appellant's contention that an in-court identification made of him by Anthony Ragland was tainted by an illegal pre-trial identification procedure. Through his counsel, appellant presented a pre-trial motion to suppress the proposed in-court identification testimony of Anthony Ragland. That motion was denied and Ragland was permitted to testify to the jury that appellant was the person he saw shoot Marvin Wyatt. Appellant points out that Ragland initially picked appellant's photograph from an array of ten displayed to him by police early in the morning of June 19, 1974, at which time it is argued, appellant "was the primary focus of the police investigation and [at which time] the police had formed the intention to arrest [him]." Appellant contends, therefore, that adversary proceedings had been initiated against him and that he was entitled to counsel at the time of the photographic identification made by the witness Ragland. *See Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974), *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970) (initiation of adversary proceedings, and requirement of counsel commences with the arrest). This out-of-court identification allegedly resulting from an invalid uncounselled photographic identification procedure was not introduced into evidence at trial, however, and we therefore need not decide whether appellant was entitled to the representation of counsel at the time of that pre-trial photographic array. The only issue with which we must now be concerned is whether the in-court identification made by the witness Ragland was impermissibly tainted by the pre-trial procedure (assuming, *arguendo,* that the pre-trial procedure was invalid), and was therefore improperly admitted into evidence at trial.

Where the admissability of the evidence of the pre-trial procedure itself is not at issue, we have applied the test of *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963):

> "[w]hether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*See Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971). The question then becomes one of determining whether the prosecution has clearly established the independent origin of the in-court identification for, as recognized in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the presence of other factors could indicate that the in-court identification was reliable despite the illegality of the pre-trial identification process. *See also, Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The *Neil v. Biggers, supra,* opinion addressed itself to "the factors to be considered in evaluating the likelihood of misidentification" and concluded that consideration should be given to

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Id.,* 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. Similarly, in *United States v. Higgins,* 458 F.2d 461 (3d Cir. 1972), the court set forth and applied the following criteria to determine the reliability of an in-court identification:

> "(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification."

*Id.* at 465.

Application of the *Higgins* criteria to the facts of the instant case indicates that the prosecution has met its burden of establishing an independent basis for the in-court identification. First, the pre-trial procedure consisted of showing the witness ten photographs, one of which was appellant. Appellant does not now argue that the photographs themselves were overly suggestive in any way. Indeed, at the pre-trial suppression hearing the prosecution presented evidence indicating that the nine photographs of persons other than appellant were of persons of similar age, complexion, and hair style. The record also indicates that the witness was not told that the group of ten photographs contained one of a suspect in this case; he was simply given the ten photographs and asked if he recognized any of them. After viewing the photographs for two or three minutes, Ragland picked out appellant's picture and said that he was the person who had shot Wyatt.

As to the rest of the *Higgins* criteria quoted above, the prosecution's evidence at the suppression hearing established that the witness Ragland viewed Wyatt's killer for a period of approximately five minutes, while all three were standing on a street corner which was illuminated from overhead by a mercury vapor type street light. For most of this time, the witness was within eight to twelve feet of the shooter. Based on this view, Ragland had, prior to identifying appellant's photograph, described Wyatt's assailant to the police. That description was consistent with appellant's appearance. Moreover, that was the only identification of the killer made by Ragland prior to the pre-trial suppression hearing (Ragland was never requested to pick Wyatt's assailant from a line-up, nor were any other photographs shown to him). Lastly, although approximately nine months had elapsed between the time of the shooting and the pre-trial suppression hearing, Ragland's testimony at that hearing was positive and consistent, and unshaken on cross-examination. Allowing him to testify at trial that appellant was the person he saw shoot Wyatt was therefore not error.

■ Next we consider appellant's contention that the trial court erroneously limited defense counsel's cross-examination of the prosecution's key witness, Anthony Ragland, regarding his knowledge of an identification of the perpetrator allegedly given to the police by Crawford, the details of which allegedly contradicted Ragland's identification. This attempt was objected to by the prosecution, and the court sustained the objection, having concluded that the proposed cross-examination would elicit inadmissable hearsay testimony from Ragland. Whether or not the proposed question was objectionable on hearsay grounds need not now concern us for it is clear that even if the prosecution's objection was erroneously sustained, appellant was not prejudiced thereby. The only thing that appellant was prevented from doing was to ask Ragland if he knew that Crawford had described Wyatt's killer as having worn a hat at the time of the shooting, whereas Ragland, in his original description to police, said that the killer was bareheaded. Both witnesses, according to the prosecution's evidence, had identified appellant as the killer. Thus, defense counsel's attempt to impeach Ragland's credibility by questioning him regarding Crawford's identification, went not to the substance of the identification, but rather to some minor peripheral matter. Furthermore, in rejecting defense counsel's reasons for wanting to question Ragland regarding Crawford's identification of appellant, the trial court stated,

"I understand that the Commonwealth is looking for the witness [Crawford].

. . . . .

If before the trial is over at a proper time you again wish to ask Mr. Ragland this question and if at that time Mr. Crawford still has not been produced I will then consider your request at that time."

Defense counsel never renewed his attempt to question Ragland on this issue. Moreover, defense counsel was allowed, as has been discussed previously in this opinion, to question two police officers who were on duty on the night of the homicide as to these allegedly conflicting identifica-

tions by Ragland and Crawford. Any error the trial court may have committed in limiting cross-examination of Ragland was therefore harmless beyond a reasonable doubt.

■ Lastly, we come to the question of whether the trial court erred in refusing to allow defense counsel to cross-examine the prosecution witness, Ragland, regarding Ragland's alleged record as a juvenile offender. Appellant argues that he was denied his Sixth and Fourteenth Amendment right to confront the witnesses against him because the trial court's ruling effectively prevented him from pursuing one avenue of attack against this prosecution witness's credibility.

The facts surrounding this issue are as follows. As previously mentioned, Anthony Ragland was the prosecution's key identification witness. Midway through his cross-examination of Ragland, defense counsel apparently requested the prosecuting assistant district attorney to give him a copy of Ragland's juvenile record. All that appears on the record regarding this request is what follows:

> "[Assistant District Attorney]: Your Honor, Mr. D'Ambrosio has made a request upon me which I would like to see the Court about.
>
> . . . Conference in Chambers . . .
>
> THE COURT: The juvenile record of this witness is inadmissible and may not be used for purposes of cross-examination.
>
> End of conference in Chambers . . . ."

It is apparent therefore that what was expressly refused by the trial court was counsel's request to examine Ragland's juvenile record. The basis of that refusal, of course, was the court's belief that *any* questioning of Ragland by defense counsel regarding Ragland's juvenile record would have been improper. The prosecution now argues that the trial court's action was correct because the results of juvenile adjudications are always inadmissible for impeachment purposes. In support of this proposition, the prosecution cites *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591

(1973), and the Juvenile Records Act of 1972, Act of Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. §§ 50–102 et seq.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), however, the Supreme Court held that the Sixth Amendment right of confrontation requires that a defendant in a state criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness's probationary status as a juvenile delinquent notwithstanding that such impeachment would conflict with the state's asserted interest in preserving the confidentiality of juvenile delinquency proceedings. The prosecution does not contend that *Davis* is inapplicable in Pennsylvania, but rather, it argues that *Davis* requires only that a defendant be allowed to cross-examine regarding the witness's juvenile record when such cross-examination is designed to show the witness's bias. In the instant case, according to the prosecution, defense counsel's request was a general one, seeking permission to explore the witness's juvenile record on cross-examination, without any mention being made of a possible theory of bias on the part of the witness which could have brought the situation within the ambit of *Davis*. Without such an assertion of bias, contends the prosecution, the trial court properly followed *Katchmer, supra,* in denying defense counsel's request. Specifically, the prosecution argues:

> "it is claimed [by appellant] that possibly some bias on the part of Ragland might have been revealed had the questioning been permitted. In light of his inability at trial or on appeal to specify how this might have been achieved, it is apparent that defendant's position is based on no more than speculation even at present. The Commonwealth submits that if the protection of anonymity for juvenile offenders provided by the Juvenile Act of 1972 is ever to be violated, this should only be on the basis of a concrete demonstration of necessity to prove particular bias or prejudice, which is totally lacking in this case."
>
> (Prosecution brief, pg. 13)

In *Commonwealth v. Katchmer, supra,* we held that the trial court committed reversible error in *permitting the prosecution* to cross-examine defense alibi witnesses concerning prior juvenile offenses. In doing so, we said,

"[t]his Court has in the past permitted the use of prior convictions of felonies or misdemeanors in the nature of crimen falsi to impeach the credibility of a witness. More recently, we have recognized that, in order to prevent smearing rather than merely discrediting of the witness, such impeachment should be limited to crimes involving dishonesty or false statement. Applying that test to the case at bar, we have serious doubts that under-age drinking involves a character trait that would suggest a propensity for false swearing.

However, more important considerations compel the conclusion that the cross-examination in this case was improper. We have long held that prior bad acts not resulting in a conviction are not admissible to impeach a witness' credibility. Thus, the fact of a prior arrest cannot be used to challenge credibility. We expressed the rationale for such a rule in [*Commonwealth v. Ross*, 434 Pa. 167, 252 A.2d 661 (1969)]: 'As a general rule, however, there must be a conviction of the felony or misdemeanor before such evidence is relevant, because there is a vast difference between a conviction and a mere accusation. An inquiry as to a mere arrest or indictment is not permitted because an arrest or an indictment does not establish guilt, and the reception of such evidence would merely constitute the reception of somebody's hearsay assertion of the witness' guilt. 3 Wigmore, Evidence § 980(a) (3d ed. 1940).' " 434 Pa. at 171, 252 A.2d 661, at 662.

. . . . .

"Assuming arguendo that the witnesses had been adjudged delinquent such an adjudication would not have constituted a criminal conviction under the terms of the Juvenile Court Act of 1933 which provides: 'No order made by any juvenile court shall operate to impose any of

the civil disabilities ordinarily imposed by the criminal laws of the Commonwealth, nor shall any child be deemed to be a criminal by reason of any such order or be deemed to have been convicted of a crime.' Act of June 2, 1933, P.L. 1433, § 19, 11 P.S. § 261, repealed, Act of December 6, 1972, P.L. 1464, No. 333, § 337, 11 P.S. § 50–337 (Supp. 1973–74). The legislature explicitly has directed that juvenile adjudications do not rise to the level of an adult criminal conviction. Such adjudications have therefore been held to be inadmissible for impeachment purposes." (Citations and footnotes omitted.)

453 at 464–466, 309 A.2d at 593.

If, as is now asserted by appellant, Ragland's juvenile record could have been used to show a motive for testifying against appellant (for example, in an effort to secure more lenient disposition of pending juvenile delinquency adjudications), the rationale behind the *Katchmer* prohibition would not apply to the instant case. Furthermore, the *Katchmer* rationale applies only to the attempted use by the prosecution of a witness juvenile record. In that situation, no countervailing confrontation right considerations are present. Where the accused desires to use a witness's juvenile record to impeach credibility, therefore, the different considerations require a different result.

What the trial court did in this case, however, was to prevent defense counsel from obtaining the prosecution's copy of Ragland's alleged juvenile record. By doing that, the trial court made it impossible for counsel to know whether or not that record contained anything upon which he could argue that the witness was biased against the defendant. Appellant cannot now be required to have established Ragland's bias at trial when the record indicates that he was denied access to information on which he might have based such an allegation. The trial court's refusal was therefore error.

The record, however, is not clear as to whether that error prejudiced appellant in any way. (The record does not even indicate whether or not Ragland, in fact, had a record of

juvenile offenses, let alone whether that record, if it exists, would support appellant's claim of bias). We therefore remand the matter to the trial court with instructions that appellant, through his counsel, be given access to Ragland's juvenile record. Counsel will then be able to argue to the trial court what, if any, use could have been made of that record had he been allowed to use it to cross-examine Ragland. If, in the court's opinion, its original refusal to allow defense counsel to cross-examine Ragland on the basis of this juvenile record prevented appellant from presenting to the jury evidence regarding Ragland's possible bias, or other information which would bring the case within the requirements of *Davis, supra*, it shall vacate the judgment of sentence and order a new trial. If, on the other hand, Ragland has no juvenile record, or if in the court's opinion, appellant has failed to assert any facts which would bring the case within the rationale of *Davis, supra*, it shall affirm its original order. Either party may then file an appropriate appeal.

Case remanded for further proceedings consistent with this opinion.

ROBERTS and NIX, JJ., filed dissenting opinions.

LARSEN, J., dissents.

ROBERTS, Justice, dissenting.

In *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), this Court held:

> "The practice in some judicial districts of ignoring the requirements of Rule 1123(a) [specifying written post-verdict motions] is condemned. Henceforth, issues not presented in compliance with the rule will not be considered by our trial and appellate courts."

*Id.,* 460 Pa. at 33, 331 A.2d at 214. In *Commonwealth v. Roach*, 477 Pa. 379, 380, 383 A.2d 1257, 1258 (1978) (Concurring Opinion by Roberts, J.), I stated that *Blair* should be given effect beginning with its publication in the Atlantic Second, March 1, 1975. See also, *Commonwealth v. Hitson,*

482 Pa. 404, 393 A.2d 1169 (1978) (Concurring Opinion by Roberts, J., joined by Nix, J.). Appellant filed only boiler-plate post-verdict motions after *Blair's* publication in Atlantic Second. None of the issues the majority now addresses therefore were properly preserved for appellate review. I would affirm the judgment of sentence.

NIX, Justice, dissenting.

I am again required to express my disagreement with the majority's reluctance to compel compliance with the provisions of Pa.R.Crim.P. 1123(a) and the explicit mandate of *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). In *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978) we took great pains to explain that the requirement of specific written post-trial motions was not merely an arbitrary insistance upon form but rather, because of its importance in the review process.

"Where boiler plate variety motions are filed, it is often difficult, if not impossible, to determine with precision the issues actually argued before the court below. The trial court's opinion may not refer to all questions touched upon in oral argument; the trial court may *sua sponte* address an issue not presented by the parties; and finally, the court may misperceive the issue actually urged by the party.

In sum, the insistance upon the requirement of specific written post-verdict motions in accordance with Rule 1123(a) enhances the quality of review; encourages professional advocacy; discourages pursuit of frivolous claims; and promotes judicial economy. Because of the desirability of the objectives sought to be obtained by enforcement of this requirement and the unequivocal notice to the bench and the bar that strict compliance would be expected as to motions filed after our *Blair* decision, there is no longer a justification for a continuation of an exception of the application . . . ."

*Id.,* 477 Pa. at 435–36, 384 A.2d at 237.

In *Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978) (Concurring Opinion by Nix, J.). I set forth my views

as to why an unfiled memorandum, which is the case here, is inadequate to accomplish the objectives sought to be achieved by the requirement of a specific, written post-trial motion. *See* also *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978) (Dissenting Opinion by Nix, J.).

I would affirm the judgment of sentence, because the issues presented were not properly preserved.