Harold **KONIGSBERG**, Appellant,

v.

**UNITED STATES of America.**

No. 17882.

United States Court of Appeals
Third Circuit.

Argued Oct. 10, 1969.

Decided Nov. 28, 1969.

Frank A. Lopez, Brooklyn, N. Y.

Elliot Scher, Asst. U. S. Atty., Newark, N. J. (Donald Horowitz, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN, FORMAN, and ALDISERT, Circuit Judges.

1. United States v. Konigsberg, 336 F.2d 844, rehearing denied, 336 F.2d 853 (3 Cir. 1964), cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964).

2. A New York State post-conviction hearing was held in the New York County Supreme Court to determine whether the appellant was a multiple felony offender.

3. The District Court cited the following portions of the examination of Agent Straub by the appellant:

"Q. Did you let this defendant, when he at first asked and demanded to call his lawyer, at the time you gave him this warning, call his lawyer? A. If you are referring to in the automobile and you asked to make a phone call, we did not.

Q. All right. Now when we got to the

**1271**

## OPINION OF THE COURT

PER CURIAM.

Harold Konigsberg appeals from a denial by the United States District Court for the District of New Jersey of his motion pursuant to 28 U.S.C. § 2255 to vacate a sentence of ten years imposed upon him in that court on July 16, 1963. He was convicted on an indictment charging him with possession of property stolen from interstate commerce in violation of 18 U.S.C. § 659. The conviction was affirmed in an opinion by this court [1] where the facts and arguments of the case were so fully explored as to make references to them here unnecessary unless they bear directly upon the issues of the instant appeal.

Appellant is principally aggrieved by the failure of the District Court to view favorably two grounds for his § 2255 motion which he urges originated after the affirmance of his conviction by this court in 1964. The first is his contention that testimony taken at a 1967 Supreme Court hearing [2] showed that during his 1963 trial there was illegal suppression by the Government of evidence which was favorable to him. Specifically, he argued that the thrust of this testimony demonstrated that the arresting Federal Bureau of Investigation agents refused to allow the appellant the use of a telephone to call his lawyer for several hours after his arrest.[3] Appellant urges that had

office, when did you let me call, it was three hours later, or two and a half hours later, from the time we entered the office; is that correct? A. I would say approximately that time, yes.

Q. How many times would you say that you testified to that I requested—the words you used 'requested to call my lawyer,' prior to the time I called him? A. I'm sorry, you lost me there.

Q. How many times did you testify to, at that trial, stating, when Mr. Brown asked you, 'How many times did he ask to call his lawyer?'—how many times did you say? A. I couldn't recall what I said.

Q. Well, how many times would you say I asked you? A. Well, as I say, you asked to use the phone.

this court been informed of these facts at the time of its affirmance of the 1963 conviction, it would have been compelled by Escobedo v. Illinois [4] to exclude the incriminating statements.[5]

■ This argument, however, ignores the fact that the testimony given at the New York hearing did not reveal any substantive discrepancies from the testimony of the agents at the 1963 trial. There, one of the agents in question testified that the incriminating statements were freely offered by the appellant.[6] Moreover, both the trial court and this court on appeal found no evidence suggesting that there was a denial of counsel. In denying a petition for rehearing, it was concluded that:

"Under the evidence documented in our opinion, we found that the process in this case was investigatory, that it was uncontradicted that there had been no attempt to elicit a confession and that the facts of this matter differed radically from the Escobedo situation. We therefore supported the trial court's conclusion that Konigsberg's statements were voluntary and admissible into evidence." [7]

The new testimony offered by appellant in no way contradicts the court's previous determination that at the time the

Q. All right, Mr. Straub—— A. And I know you said, 'When can I call my attorney?' whether you asked——
Q. When can I call my attorney. Now, I'm going to help you a little bit. This didn't come out in the record, and let me see how good your memory is Mr. Straub. You remember you and I sitting at the desk and Mr. Roetzel sitting on the side? A. Yes.

Q. Do you remember one time that I picked up the phone and Mr. Roetzel grabbed it, and you says to me, 'Aw Harold, that ain't necessary'—do you remember that? A. I think I do recall you grabbed a phone * * *."4 [Transcript of New York Supreme Court hearing, pp. 791–92].

"Q. Right. I was in the car with you. You made an arrest. I was under arrest. It was not investigatory, and I stated to you that I wanted to make a phone call several times; correct? A. Yes.
Q. So, therefore, you got this statement after I declared myself that I wanted to make calls. A. Yes.
Q. So your meaning, when you said that I had a right to an attorney and I wanted to call one, meant nothing * * *." 5 [Transcript of New York Supreme Court hearing, pp. 798–99].
"Q. Now, it was after the administration functions were finished that I made this call, correct? A. Yes.
Q. Was that the only reason I wasn't permitted to make the call, because you had administrative functions? A. We had certain things that we had to get done.
Q. Like interrogating me? A. No.
Q. No. All right. Again was the phone right alongside of me? How much of an

inconvenience would it have been to you if I used that phone? A. You used that phone.
Q. But when? When I asked, demanded or requested? A. At the time you picked it up.
Q. Did I use it at the time I picked it up? A. No.
Q. No. But you and Mr. Roetzel decided for me to use the phone, as you say, when you wanted it, not when I wanted to, because prior to that I tried to pick up the phone and make a call; is that correct? A. You tried to pick up the phone and make a call, yes.
Q. But I couldn't make the call at that time, could I? A. You didn't make the call * * *." 6 [Transcript of New York Supreme Court hearing, p. 807].
Konigsberg v. United States, No. 465–68, pp. 8–10 (D.C.N.J. February 13, 1969).

4. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

5. Appellant adds that the subsequent Supreme Court decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), also makes it clear that this court erred in its decision that the incriminating statements did not fall within the purview of the *Escobedo* decision. However, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966) holds that *Miranda* is not to be applied retroactively under circumstances similar to the instant case.

6. Agent Straub testified that his talk with Konigsberg " * * * was more like a conversation than an interview." Konigsberg v. United States, 336 F.2d at 852.

7. *Id.* at 853.

incriminating statements were made the process of the case was investigatory and not accusatory. Due consideration of this testimony leaves us convinced that, contrary to the appellant's contentions, had the court been aware of it at the time of the appellant's direct appeal it would have had no effect on its ruling.

Appellant's second contention is that the District Court erred in not considering the question of his standing to contest the legality of a search and seizure which occurred during his arrest.[8] He argues that under the recent Supreme Court decision in Kaufman v. United States [9] the District Court was obligated to consider this question. Once having considered it, he contends that the decision in Simmons v. United States [10] would have required the District Court to grant the § 2255 motion since the *Simmons* decision, he argues, makes it clear that he had standing to challenge the legality of the search and seizure.

■■ *Kaufman*, however, did not establish a mandatory rule controlling in all cases. The Court there held that questions concerning search and seizure were entitled to the same consideration in a § 2255 motion as other constitutional claims. But the Court also stated that

> "when a request for relief under § 2255 asserts a claim of unconstitutional search and seizure which *was tested by a motion to suppress at or before trial under Fed.Rule Crim. Proc. 41(e), the § 2255 court need not stop to review the adequacy of the*

*procedure established by that Rule. * * * "* [11] (Emphasis supplied.)

Thus, where a federal court had an opportunity to consider the merits of the contention it is within the discretion of the § 2255 court whether or not to relitigate the issue. Since in this case there had been a motion to suppress at trial and a full consideration of the merits on appeal, we find that the District Court acted well within the bounds of proper discretion in refusing to consider the appellant's contention that he had standing to contest the search and seizure. Furthermore, assuming that the appellant had standing, it is noteworthy that both the trial court [12] and this court [13] found with ample ground that probable cause for arrest existed at the time of the search and seizure.

■ Appellant's additional argument on this appeal that because the jury was present during a portion of the hearing on the voluntariness of his incriminating statements he was denied a Jackson v. Denno [14] hearing is also without merit. Again, appellant is attempting to collaterally attack an issue raised on direct appeal and decided adversely to him. The conclusion already determined by this court is still apt:

> "Since Escobedo is inapplicable to the situation before us, the argument that Konigsberg's statement was involuntary and therefore he was deprived of due process of law under Jackson v. Denno must fall." [15] (Citations omitted.)

8. On the authority of the decisions in Thorton v. United States, 125 U.S.App. D.C. 114, 368 F.2d 822 (1968) and United States v. Jenkins, 281 F.2d 193 (3 Cir. 1960), the District Court held in part that

"a claim of illegal search and seizure ordinarily may not be successfully raised in a proceeding which constitutes collateral attack on the sentence, but must be presented in the appeal from the conviction."

Konigsberg v. United States, No. 465–68 (D.C.N.J., February 13, 1969).

9. 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

10. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968).

11. 394 U.S. at 277, 89 S.Ct. at 1074.

12. United States v. Konigsberg, No. 31–62 (D.C.N.J., July 10, 1963).

13. Konigsberg v. United States, 336 F.2d at 848.

14. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964).

15. Konigsberg v. United States, 336 F. 2d at 853. It is also noted that the

The appellant's charge that the District Court erred in refusing to grant an evidentiary hearing on his petition is stripped of any substance by the failure of the file and the entire record to disclose a valid justification therefor. They were painstakingly reviewed by the District Judge under the standards enunciated in Sanders v. United States.[16]

The other arguments raised on this appeal are not worthy of discussion.

The order of the United States District Court for the District of New Jersey of February 13, 1969 denying appellant's motion to vacate his sentence will be affirmed.

*Jackson* decision did not hold that voluntariness hearings must be conducted outside the presence of the jury. See Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967).

16. 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963).