Bartholomew DiANGELO, Petitioner,

v.

UNITED STATES of America,
Respondent.

Civ. A. No. 74–2448.

United States District Court,
E. D. Pennsylvania.

Jan. 6, 1976.

Bartholomew DiAngelo, pro se.

William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

Petitioner, Bartholomew DiAngelo, was convicted by a jury in this court of conspiring to rob and of robbing a federally insured bank.[1] We sentenced him to a term of fourteen years' imprisonment to be followed by a term of five years' probation. The Court of Appeals affirmed. *United States v. DiAngelo*, 493 F.2d 1401 (3d Cir. 1974). DiAngelo now moves pursuant to 28 U.S.C. § 2255 to vacate the conviction and sentence. He first alleges that his constitutional rights were violated because his counsel was not present at the time, prior to trial, when the Assistant United States Attorney showed a witness, who later identified DiAngelo in court, a photographic display which included DiAngelo's picture. Second, DiAngelo claims that he did not receive the effective assistance of counsel guaranteed him by the Sixth Amendment, because counsel failed to move to suppress the above in-court identification and to subpoena two witnesses whose testimony would have attacked the validity of the identification.

Section 2255 requires that we afford DiAngelo a hearing on these issues "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Moreover, in *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), the Court warned that the statutory phrase "conclusively show" is to be construed to afford a hearing unless "under no circumstances could the petitioner establish facts warranting relief under Section 2255." We believe that petitioner's identification claim presents one of those instances where the files and records of the case conclusively show that petitioner is entitled to no relief, but we find that we must hold a hearing on the issues raised by DiAngelo's second stated ground.

### I. The Identification Issue

The government relied in its case in chief upon the testimony of two eyewitnesses to the robbery. One of those witnesses, Alvin C. Wipplinger, was employed as an assistant branch manager at the bank on the day of the incident. During the trial, Mr. Wipplinger identified DiAngelo as one of the robbers and also testified that he had twice chosen DiAngelo's picture from arrays of photographs shown him by F.B.I. agents.[2] Petitioner relies on *United States v. Zeiler*, 427 F.2d 1305 (3d Cir. 1970), to attack the identification. That case held that such a photographic spread constitutes a "critical stage" of the criminal process and, thus, the defendant is entitled to have counsel

---

1. 18 U.S.C. §§ 371, 2113(a), (b), (d). The testimony at trial established that at about 2:45 P.M. on March 24, 1972, petitioner and an accomplice entered the Horsham branch of the Philadelphia National Bank, each carrying a revolver, announced a hold-up, took cash from two tellers and from the bank's safe and escaped with over $11,000.

2. Testimony reciting prior out-of-court identifications by a witness who also makes an in-court identification is permitted in this Circuit. *United States v. Hines*, 470 F.2d 225 (3d Cir. 1972), *cert. denied*, 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); *cf. United States v. Holland*, 378 F.Supp. 144 (E.D.Pa.), *aff'd, Appeal of Ehly*, 506 F.2d 1050 (3d Cir. 1974), *cert. denied*, 420 U.S. 994, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975); Fed.R.Evid. 801(d)(1)(C), *as amended*, Pub.L. 94–113, 18 Crim.L.Rptr. 2082 (1975).

present. Unfortunately for petitioner, *Zeiler* was overruled by *United States ex rel. Reed v. Anderson,* 461 F.2d 739 (3d Cir. 1972) (en banc), and rejected a year later by the Supreme Court in *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The Supreme Court recognized in *Ash* that even though a photographic spread is not a "critical stage" of the prosecution, a defendant may still move as a matter of due process to suppress a later in-court identification "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Thus, although the petition clearly raises only the *Zeiler* counsel point as grounds for relief on the identification issue, we will, out of an excess of caution, also address the due process question.

◼◼◼◼ Trial counsel for petitioner did not request a suppression hearing to obtain a ruling that the out-of-court identifications were impermissibly suggestive. Such a ruling would not only have required suppression of the out-of-court identifications, but also the exclusion of Wipplinger's in-court identification, unless an independent basis for the in-court identification could be established. *Simmons, supra* ; see *United States v. Wade,* 388 U.S. 218, 241–42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In this case, however, even if we were to find that the photo spreads were impermissibly suggestive,[3] we would find, based upon Wipplinger's testimony, that his in-court identification was the product, not of any impermissible suggestion, but of an independent source and thus not susceptible to suppression on due process grounds.

The relevant portions of Wipplinger's testimony show that petitioner entered the bank with his accomplice and or-

dered Wipplinger to stand with hands against the wall. Petitioner was wearing a stocking over his face but, according to Wipplinger, the stocking distorted his features only "slightly." During this period of time, Wipplinger testified that he was approximately six feet away from the petitioner and was able to observe him and his face for "about a half minute or so." Wipplinger made a positive in-court identification of petitioner. As to the earlier photographic identifications, Wipplinger stated that he was shown a display of eight or nine photos by Agent Nolan of the F.B.I. at Wipplinger's office in the bank on March 27. The relevant portion of his testimony regarding this photo display is as follows:

Q. [By the Assistant U.S. Attorney] Now, in what manner did he [Agent Nolan of the F.B.I.] display the photos to you? Where exactly did he display the photos?

A. I was at my desk at the time and he just laid the photos in front of me, put all of them down in front of me.

Q. Did he indicate to you in any manner which photograph, if any, you should pick out?

A. No, sir.

Q. And what did you do when you looked at the photographs?

A. I picked out the man that held the gun on me.

Q. The photograph of the same individual who you have identified today?

A. Yes, sir, it is.

Q. And how certain were you at that time that that was the individual?

A. I was sure.

Wipplinger testified that the second photo display, which also consisted of eight or nine photos, took place in the U.S. Attorney's office during the middle of December 1972. Agent Toohey of the F.B.I and the Assistant U.S. Attorney, Mr. Meltzer, showed Wipplinger the photos. The relevant portion of his testimo-

---

**3.** We note, however, that the only evidence in the record on this point, Wipplinger's own tes-

timony described *infra,* points plainly to the conclusion that there was no suggestiveness.

ny regarding this photo display is as follows:

Q. Now at that time did anyone indicate to you in any way which photograph you were to pick out, if any?

A. No, sir.

. . . . .

Q. And in what manner were they displayed to you?

A. Just laid out in front of me. Asked me if I could pick out the man involved in the bank robbery. I picked out the picture again of the gentleman sitting there.

Q. The same photograph that you had picked out previously?

A. Yes, sir.

The brief cross examination of the witness did not touch on the identification issue.

*United States v. Higgins,* 458 F.2d 461 (3d Cir. 1972), set out seven factors to be considered in determining whether an in-court identification is the product of an independent source:

(1) the manner in which the pre-trial identification was conducted;

(2) the witness' prior opportunity to observe the alleged criminal act;

(3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification;

(4) any previous identification by the witness of some other person;

(5) any previous identification of the defendant himself;

(6) failure to identify the defendant on a prior occasion; and

(7) the lapse of time between the alleged act and the out-of-court identification.

458 F.2d at 465. It is not clear from DiAngelo's petition whether he alleges that the first pretrial identification, the second, or both irreparably impaired Wipplinger's ability to make an accurate identification during trial. Despite the occurrence of both previous identifications, we have no doubt that Wipplinger's in-court identification was the product of an independent source as that term is defined in *Higgins.*

Both times Wipplinger was shown photographs, eight or nine pictures were spread before him without any attempt being made to suggest a particular selection. Contrary to petitioner's contention, the fact that the latter display was made while petitioner was in custody affords him no sustenance in light of *Reed* and *Ash.*

Wipplinger's ability to observe the criminal act was clear and unimpeded. He viewed petitioner for thirty seconds, from a distance of approximately six feet. He found the stocking mask only slightly distorting.

No discrepancies between the defendant's actual description and any description given previously by Wipplinger are alleged, and a review of the record indicates that none exist.

Petitioner does not allege that Wipplinger ever identified anyone else as the offender. Additionally, petitioner's case is not strengthened because Wipplinger was shown two photographic displays. Both the Court of Appeals and the Supreme Court have affirmed convictions where witnesses participated in two pretrial photographic line-ups. See, e. g., *Simmons, supra,* 390 U.S. at 382–86, 88 S.Ct. 967; *Higgins, supra,* 458 F.2d at 468.

■ The only factor that could weigh in favor of suppression is petitioner's allegation that approximately two weeks after the incident, Wipplinger was unable to identify petitioner's picture when it was shown to him by two Pennsylvania State Parole Officers. Accepting this allegation as true for the purposes of this ground of the motion, we still believe, given the other circumstances, that Wipplinger's in-court identification was the product of an "independent source." Significantly, the first identification occurred just three days after the

incident, when petitioner's visage, in all likelihood, remained in Wipplinger's mind.[4]

We have no doubt then, that the facts point to the conclusion that Wipplinger's in-court identification was the product of an independent source. Overwhelmingly, they show that the witness had lengthy opportunity to clearly observe petitioner, identified him just three days later and never misidentified him. At worst, on one occasion he *may* have failed to identify his picture. We are of the opinion that the motion and the record of the case "conclusively show" that petitioner "is entitled to no relief" on the identification ground.

## II. *The Ineffective Assistance of Counsel Issue*

DiAngelo alleges in his petition that his trial attorney, Daniel L. Quinlan, Esquire, knew that Wipplinger had been unable to identify a picture of petitioner when it was shown to him by two Pennsylvania State Parole Officers two weeks after the robbery, but failed to subpoena either of the parole officers to undermine the validity of the in-court identification. DiAngelo also alleges that Mr. Quinlan did not request a hearing to suppress the in-court identification.

Counsel for the government has argued that DiAngelo's claim of ineffective assistance of counsel at trial was previously raised on direct appeal and, as a result, may not now be raised on collateral attack, citing *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (successive § 2255 petitions). Such is not the law. Section 2255 confers as broad a power as common law habeas corpus, *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), and the District Court thus has full authority to reexamine the lawfulness of any conviction or sentence entered in that Court. See *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). An appellate affirmance does not preclude collateral reconsideration; rather, it is but one factor bearing on whether a hearing should be afforded. As the Supreme Court put it:

> Where a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a Section 2255 hearing.

*Kaufman v. United States,* 394 U.S. 217, 228 n.8, 89 S.Ct. 1068, 1074 n.8, 22 L.Ed.2d 227 (1969); see *Konigsberg v. United States,* 418 F.2d 1270 (3d Cir. 1969), *cert. denied,* 398 U.S. 904, 90 S.Ct. 1693, 26 L.Ed.2d 63 (1970). The preliminary question presented by this aspect of petitioner's motion is thus whether the same issue raised in the petition was heard and determined on appeal.[5]

DiAngelo was represented in his appeal by new counsel, Mark Shaffer, Esquire, the Federal Public Defender; DiAngelo and Mr. Quinlan, his trial counsel, had by that time parted ways. In his brief to the Court of Appeals, DiAngelo asserted three basic claims of ineffective assistance: (1) his trial counsel had also represented a government

---

4. There is clearly nothing improper in the F.B.I.'s showing pictures to Wipplinger three days after the robbery while attempting to identify and apprehend offenders—a practice approved by the Supreme Court in *Simmons,* 390 U.S. at 384, 88 S.Ct. 967; or in the Assistant United States Attorney's doing the same thing while preparing his witness for trial—a practice approved by the Supreme Court in *Ash,* 413 U.S. at 317–18, 93 S.Ct. 2568.

5. Where the District Court determines that an issue was *not* raised on direct appeal, it must then ask whether the issue was deliberately bypassed there. "[T]he § 2255 court may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures provided at or before trial and by way of appeal . . . ." *Kaufman v. United States,* 394 U.S. 217, 228 n.8, 89 S.Ct. 1068, 1075 n.8, 22 L.Ed.2d 227 (1969); *cf. Fay v. Noia,* 372 U.S. 391, 435–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). No issue of bypass on appeal is presented here, since the particular ineffective assistance claim now before us could not have been raised on appeal. *United States ex rel. McCann v. Adams,* 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4 (1943); *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1204–05 (1973). *See* discussion *infra.*

witness in the case; (2) trial counsel's alleged lack of skill during the trial; (3) trial counsel's alleged lack of diligence in case preparation and investigation. DiAngelo's claims on the first two points were based upon the trial record. However, in support of the third point, appellate counsel augmented the trial record by an appendix containing various exhibits, including a letter from Quinlan to DiAngelo, dated two months after trial, requesting an interview to discuss the names of witnesses; a memorandum written to Quinlan by one of his assistants describing the DiAngelo interview, which includes the names of the two Pennsylvania State Parole Officers; and an investigative report done for appellate counsel which states that the parole officers were still in the employ of the Pennsylvania State Parole Board at the time of the appeal.

The Court of Appeals, in its judgment order affirmance, stated, "After considering the contentions raised by appellant that appellant was denied effective assistance of counsel due to (1) counsel's conflict of interest . . ., and (2) counsel's lack of diligence in case preparation and during the trial itself, IT IS ADJUDGED AND ORDERED that the judgment and commitment of the District Court be and is hereby affirmed."

■ The succinct judgment order does not indicate to us with any degree of precision the scope of the Court of Appeals decision. Clearly, however, DiAngelo now raises two additional examples

of ineffective assistance which could not have been disposed of by the Court of Appeals. The appellate briefs and appendices did not raise at all the failure to move to suppress. Arguably, the third claim made in the Court of Appeals, i. e., lack of diligence in preparation, subsumes the allegation now made regarding the two parole officers, but the reference in the appellate appendix to the alleged misidentification is cryptic at best. Moreover, a claim based on unresolved questions of fact dehors the trial record cannot be considered for the first time on appeal, since the evidence has not been tested in the crucible of the trial court. See *United States ex rel. McCann v. Adams,* 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4 (1943).[6] Our Court of Appeals is, of course, aware of the applicable fundamental legal principles, and we therefore must assume that it did not intend to dispose with finality of the question of counsel's alleged lack of diligence in trial preparation by its judgment order on petitioner's appeal. We thus find that a hearing must be held at which petitioner may produce evidence dehors the trial record to support the claims of ineffective assistance by reason of inadequate preparation for trial; i. e., failure to move to suppress identifications and failure to subpoena the two parole officers.

Accordingly, we enter the following order appointing counsel and granting a hearing on the allegations of ineffective assistance of counsel by reason of inadequate preparation for trial.

---

**6.** Indeed, assertions of ineffective assistance of counsel usually cannot "be disposed of on the appeal of [a] conviction, for the claim rests on material dehors the trial proceedings." *McCann, supra,* 320 U.S. at 221, 64 S.Ct. at 15. As explained by the Court of Appeals for the District of Columbia:

Much of the evidence of counsel's ineffectiveness is frequently not reflected in the trial record (e. g., a failure to investigate the case, or to interview the defendant or a wit-

ness before trial). As a result, ineffectiveness cases have often evolved into tests of whether appellate judges can hypothesize a rational explanation for the apparent errors in the conduct of trial. But neither one judge's surmise nor another's doubt can take the place of proof.
*United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1204–05 (1973) (footnotes omitted). *See United States v. Tindle,* 522 F.2d 689 (D.C.Cir. 1975).