Leon PROCTOR, a/k/a Tony Proctor, Appellant,

v.

UNITED STATES, Appellee.

No. 11425.

District of Columbia Court of Appeals.

Argued Nov. 8, 1977.

Decided Dec. 14, 1977.

Jonathan G. Axelrod, Bethesda, Md., appointed by this court, for appellant.

Ann P. Gailis, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Bernard J. Panetta, II, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

This is an appeal from convictions for armed robbery (D.C. Code 1973, §§ 22–2901, –3202) and assault with intent to commit robbery (D.C. Code 1973, § 22–501). Appellant Proctor maintains that (1) the inclusion of two defective counts in the indictment charging him with obstruction of justice (D.C. Code 1973, § 22–703) deprived him of a fair trial, and that (2) his trial counsel was constitutionally ineffective. We disagree with both assignments of error and thus affirm.

I.

On October 8, 1975, the victims of the crimes, Kenneth Fleming and Kenneth Carter, while in an alley on their way to the supermarket, were surprised from behind by four individuals. One of the four, wielding a gun, took forty dollars and a radio-tape recorder from Mr. Carter. Then, after the victims were told to continue up the alley, the four fled in the opposite direction.

Both Fleming and Carter were acquaintances of the appellant, whom they positively identified as one of the four. Both victims also related, however, that appellant did not speak and took no active part in the robbery; he merely appeared with, stood with, and fled with the group.

Appellant conceded his presence at the robbery, but told a wholly different, exculpatory story of events. Briefly, he reported that Carter and Fleming approached him at Roosevelt High School and asked him where they could obtain some marijuana; that he mentioned three individuals as potential sources, including one "Pickles"; that after a brief departure, Carter and Fleming returned with the three individuals whom appellant had named; that the group apprised appellant of their intent to make a deal, and that appellant joined them and accompanied them into an alley; that one of the three "dealers" pulled a gun and robbed Carter; that fearing for the safety of his own person and property, and hoping to terminate the volatile situation, appellant urged the robber (who was behaving somewhat crazily) to "just take it and go"; that when the crime was completed the other three took flight, leaving Carter and Fleming behind; and that although he initially ran with the other three, appellant split from them at the end of the alley and fled for his own safety.

Appellant was arrested the next day, October 9, and held until October 17, when he was released on bond. Thereupon he and his girl friend (who testified that she had been able to purchase the stolen radio after inquiring on the street) contacted an intermediary to return the radio to its owner, Mr. Carter.

Fleming testified at trial that on or about October 14 appellant had approached him, made threatening remarks about Carter's report of the incident to the police, and asked that he relay a request to Carter to meet that evening with appellant and a detective at a gasoline station. At that time "the matter would be straightened out." When it appeared, later in the trial, that the appellant had been in custody on October 14, the government called Floyd Wade, who was with Fleming at the time of this alleged conversation with appellant. Mr. Wade "corrected" the date to October 9, the day after the robbery, a time prior to appellant's apprehension.

On December 8, 1975, the grand jury issued an eight-count indictment charging appellant Proctor with armed robbery, robbery, assault with intent to commit armed robbery, assault with intent to commit robbery, two counts of assault with a dangerous weapon, and two counts of obstruction of justice, as follows:

> Between on or about October 14, 1975, and on or about October 15, 1975, within the District of Columbia, Leon A. Proctor, also known as Tony Proctor, corruptly endeavored by threats and force to influence, intimidate, and impede Kenneth Carter [and Kenneth Fleming] in the discharge of his duties as a witness in the case of *United States v. Leon Proctor*, Criminal Case Number 79888–75, then pending in the Superior Court of the District of Columbia.

The trial commenced on July 22, 1976. At the close of the defense case, apparently conceding the validity of the defense argument on a motion for judgment of acquittal that it was impossible for appellant to have obstructed justice *as alleged in the indictment*,[1] the government moved to dismiss the obstruction charges. On July 27, 1976, the jury returned convictions on counts one (armed robbery) and four (assault with intent to commit robbery) and acquittals on the remaining counts. After appellant was sentenced to an indeterminate period under the Federal Youth Corrections Act, 18 U.S.C.A. § 5010(b) (Supp. 1977), he appealed.

## II.

Appellant first contends that the presentation to the jury of evidence pertinent to

---

1. According to appellant's prevailing argument, he could not have obstructed after October 9, because he was in custody until October 17, and, prior to his apprehension on the ninth, he could not have "influence[d], intimidate[d], and impede[d]" a witness "in the case of *United States v. Leon Proctor*" because the case had not yet been filed. As a result, he contended, commission of obstruction was impossible on either date.

the defective obstruction of justice counts, in the absence of a limiting instruction, tainted the case and prejudiced his right to a fair trial on the remaining counts.[2] He argues that it was plain error for the trial court not to limit jury consideration of the evidence of the alleged threats (in particular, the testimony of Floyd Wade, which was adduced subsequent to dismissal of the obstruction counts). He maintains that the trial court, *sua sponte*, should have instructed the jury to use such evidence solely for impeachment. We disagree.

■ Threats, bribery, flight, and similar post-crime conduct repeatedly have been held to evince "consciousness of guilt,"[3] and thus constitute "admissions by conduct." *United States v. Franks*, 511 F.2d 25, 36 (6th Cir. 1975); *United States v. Turner*, 158 U.S.App.D.C. 197, 206–07, 485 F.2d 976, 985–86 (1973) (Leventhal, J., concurring); *United States v. Alberti*, 470 F.2d 878, 882 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973). Consequently, the threat evidence introduced on the obstruction counts, regardless of the government's avowed or intended purpose, was probative of the first six counts, and was not limited to impeachment purposes. The trial court could not have erred at all, much less "plainly," in failing to so instruct.

2. Appellant's brief offers contentions that the very inclusion of the obstruction counts, or at least the trial court's failure to grant the defense motion for judgment of acquittal on these counts at the end of the government's case (thereby removing them from the trial at an earlier stage), was prejudicial *per se*. Assuming, solely for the sake of argument, that some error was injected by the initial or continued presence of these counts, we can perceive no prejudice to appellant. Indeed, at oral argument, counsel for appellant conceded that the sole basis for his argument of prejudice was the trial court's failure to give *limiting instructions* about the *evidence* introduced in connection with the two dismissed counts.

3. Appellant does not argue that the trial court ought to have instructed regarding the multiple permissible inferences which might be drawn from so-called "guilt consciousness" evidence. *See United States v. Franks*, 511 F.2d 25, 36

## III.

Appellant's second contention is that his trial counsel was ineffective, thereby depriving him of his Sixth Amendment rights. He alleges that the record demonstrates a failure to have corroborated his version of events (*e.g.*, the group's presence at Roosevelt High School, and their search for and use of drugs), a neglect to seek supportive witnesses (specifically "Pickles" and one Kevin, who, according to appellant's version, was among the six at the high school and could therefore confirm his story up to the time the group entered the alley), and a failure to prevent the prejudice from the defective obstruction counts.

■ We cannot conclude, on the basis of the record before us, that defense counsel was derelict in any of these respects. It is entirely possible that he did investigate and pursue all appropriate leads and witnesses, but could find no exoneration for his client on those avenues. In the absence of specific evidence to the contrary, we should not make the opposite assumption. In addition, since there was no prejudice from the inclusion of the obstruction counts, as well as from the admission of unlimited evidence pertinent to those counts, defense counsel cannot have been ineffective in failing to raise objections. In summary, we do not perceive in the record any incompetence,

(6th Cir. 1975); *United States v. Turner*, 158 U.S.App.D.C. 197, 206–07, 485 F.2d 976, 985–86 (1973); *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973); *but see United States v. Robinson*, 154 U.S.App. D.C. 265, 273, 475 F.2d 376, 384 (1973); *United States v. Telfaire*, 152 U.S.App.D.C. 146, 152, 469 F.2d 552, 558 (1972). We therefore do not decide the question. We do observe, however, that the Supreme Court recently stated:

It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.

. . . An omission, or an incomplete instruction is [even] less likely to be prejudicial than a misstatement of the law. [*Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).]

and certainly not such incompetence as deprived appellant of a substantial defense at trial. *Coleman v. United States*, D.C.App., 379 A.2d 710 (1977); *Woody v. United States*, D.C.App., 369 A.2d 592, 593–94 (1977).

██ Finally, as we recently noted in *Coleman v. United States, supra* at 713, "appellant did not raise his claim of ineffectiveness by an appropriate motion to the trial court" timely made under Super.Ct. Cr.R. 33 (new trial), or in a collateral proceeding in Superior Court pursuant to D.C. Code 1973 § 23–110 (motion attacking sentence). Although not required for an ineffectiveness claim, one of these approaches is likely to be more productive than a direct appeal because the proceeding will not be limited to evidence in the trial record.[4]

*Affirmed.*

---

**4.** We do not intend, by our resolution of the ineffectiveness claim here or by our reference to appellant's failure to utilize D.C. Code 1973, § 23–110, to preclude the appellant from raising the issue in a collateral proceeding under § 23–110 at a later time. Our decision resolves only the specific contentions before us on the trial record. If the appellant is able to furnish better evidentiary support for the present contentions based on material not provided in the record on appeal, or to frame and document contentions of ineffectiveness which we have not considered here, he is entitled to seek collateral relief in the Superior Court. See *United States v. Brown*, 155 U.S.App.D.C. 177, 179, 476 F.2d 933, 935 (1973) and *DiAngelo v. United States*, 406 F.Supp. 880, 884–85 (E.D.Pa. 1976), both of which dealt with the federal analogue of our § 23–110 proceeding, 28 U.S.C. § 2255 (1970). We express no view on whether appellant has a basis for such collateral relief in this case.