******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROGER RUFFIN
(SC 19206)

Palmer, Zarella, Eveleigh, McDonald, Espinosa,
Robinson and Vertefeuille, Js.

*Argued December 4, 2014—officially released March 31, 2015*

*Raymond L. Durelli*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Roger Ruffin, appeals from the judgment of the Appellate Court, which affirmed the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2009) § 53a-73a (a) (1) (A), one count of risk of injury to a child in violation of General Statutes (Rev. to 2009) § 53-21 (a) (1), and two counts of risk of injury to a child in violation of General Statutes (Rev. to 2009) § 53-21 (a) (2). The defendant claims that the assistant state's attorney (prosecutor), during her closing argument at trial, improperly commented on his right not to testify. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts, which are set forth in the Appellate Court's opinion. "In January, 2009, the victim[1] was twelve years old. At that time, the defendant, although married to another woman, had been dating the victim's mother for ten years. During the course of his relationship with the victim's mother, the defendant spent time alone with the victim. The defendant has four children of his own, one of whom is a daughter similar in age to the victim. The defendant's daughter socialized with the victim and her mother occasionally.

"The victim identified two separate instances of abuse. First, in January, 2009, the defendant picked up the victim in order to take her to his daughter's birthday party. Instead of going to the party, the defendant stopped his car in Keney Park in [the city of] Hartford. The defendant then asked the victim whether she had any pubic hair. The victim replied that she did not, and the defendant asked to see. The defendant then 'tugg[ed]' on the waist of the victim's shorts, pulled her shorts and her underwear down, and touched her vagina. The victim told the defendant to stop and that she felt uncomfortable, at which point the defendant stopped and drove the victim home. The defendant told the victim not to tell her mother, and, when he parked the car to drop the victim off, he kissed her and put his tongue in her mouth; he also told the victim not to tell her mother about the kiss. A couple of weeks later, the defendant again drove the victim to Keney Park and stopped his car. He asked the victim to 'suck his penis . . . .' When the victim told him no, the defendant unzipped his pants, forced the victim's head down with his hand and put his penis into the victim's mouth. The defendant moved the victim's head 'up and down' on his penis with his hand, until the victim told the defendant that she could not breathe and that she wanted to go home. The defendant took the victim home. The victim 'eventually' told her mother about the first inci-

dent when the defendant touched her vagina, but she did not tell her mother about the defendant's forcing her to perform oral sex.

"On January 30, 2009 . . . Officer James Fierravanti was called to the victim's home on a sexual assault complaint. Fierravanti spoke with the victim for about twenty minutes, in which time the victim told Fierravanti that the defendant had taken her to the park, asked if she had pubic hair and 'attempted to look'; she did not say there was any physical contact between the defendant and herself. Fierravanti left the victim's home and immediately filed a report with the detective division [of the Hartford Police Department]. In February, 2009 . . . Detective Edward Foster contacted the victim at her house. The victim confirmed the information she had given to Fierravanti and added information that was not in Fierravanti's original report. The victim told Foster that the defendant had touched her vagina on the first day in the park; she also disclosed that the defendant had forced her to perform oral sex. Foster arranged for the Aetna Foundation Children's Center . . . to interview the victim.

"On March 31, 2009, the victim spoke with clinical child interview specialist Erin Byrne. Foster observed the interview with Byrne from behind one-way glass. With the information gathered from the victim's interviews with him and Byrne, Foster obtained and then executed an arrest warrant for the defendant.

"In September, 2010, the defendant pleaded not guilty to all charges and proceeded to be tried by a jury. At trial, the state called the victim, the victim's mother, Fierravanti, Foster and Byrne. The defendant called an investigative social worker from the Department of Children and Families . . . and the defendant's wife [but did not testify himself]. During the victim's testimony, she stated that she had told different people about the incidents with the defendant at different times. Further, she testified that she could not remember how many times the defendant had kissed her." (Footnotes altered.) *State* v. *Ruffin*, 144 Conn. App. 387, 389–91, 71 A.3d 695 (2013).

In her closing argument, the prosecutor began by emphasizing to the jurors that "you have to evaluate each of the witness' testimony," and discussing generally how the jurors should assess the credibility of each witness. The prosecutor then discussed the testimony of Byrne, the social worker who interviewed the victim, and the testimony of the victim. In doing so, the prosecutor made the following remarks: "[*The victim's*] *testimony about the abuse is consistent within itself because there's nothing that she said that couldn't have happened the way she reported it, and there's nothing that she said that conflicted with something someone else said about how it happened.* She told you what the defendant said to her. She reported elements of

force and secrecy. She said he forced her head to his penis. She described how he held her—moved her head up and down with his hands or his hand. She said he forced his tongue into her mouth. She told you he told her not to tell her mother, and those were all things that Erin Byrne said she looks for to support an allegation.

"Now—and also, objectively, if she's making up an allegation, why add something like, he pulled over and asked me if I had any pubic hair, and then when I told him no, he pulled over my shorts. Why are you adding that kind of detail? Where does that come from? Doesn't that added detail give the testimony more grain of truth?

"*No person's testimony here gave you any reason to disbelieve* [*the victim*], *nor were you given any reason why the facts that she described could not have happened the way she described them. No person's testimony pointed to any reason why* [*the victim*] *would be lying or talked about a time when she did lie, or pointed to any motivation at all as to why* [*the victim*] *would falsely accuse* [*the defendant*] *of these crimes.*

"Also, no person's testimony pointed to any reason why her mother . . . would put her up to this. [The victim's mother] has not seen or spoken to the defendant since she reported this to the police on January 29 into January 30, 2009. She actually lost out herself. [The victim's mother] lost a companion, someone she trusted, someone that she relied on for financial assistance. She does not benefit by having the defendant out of her life." (Emphasis added.)

At no point did counsel for the defendant object to any of the prosecutor's remarks in her closing argument. The jury subsequently found the defendant guilty on all counts, and the trial court sentenced the defendant to a total effective term of ten years incarceration, followed by eight years of special parole.[2]

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia, that the prosecutor improperly had commented on his right not to testify when she noted in her closing argument that no witness had contradicted the victim's allegations. *State* v. *Ruffin*, supra, 144 Conn. App. 388–89. In a split decision, the Appellate Court rejected the defendant's claim of prosecutorial misconduct and affirmed the judgment of conviction. Id., 403–404, 407. The majority reasoned that the prosecutor had not improperly commented on the defendant's failure to testify but, rather, had commented only on the credibility of the victim. Id., 402. The majority further reasoned that there was no impropriety because the prosecutor never directly referred to the defendant during the contested portion of her closing argument, and defense counsel never objected to the prosecutor's closing argument. Id., 402–403. In a concurring and dissenting opinion, Judge McDonald claimed that the prosecutor's " 'no conflict-

ing witness' argument" constituted an impermissible comment on the defendant's silence because "the defendant alone has information to contradict [the victim] as to [her allegations of] sexual abuse . . . ."[3] Id., 409 (*McDonald, J.*, concurring in part and dissenting in part).

We thereafter granted certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the prosecutor did not comment on the defendant's right not to testify?" *State* v. *Ruffin*, 310 Conn. 919, 76 A.3d 634 (2013). On appeal to this court, the defendant raises largely the same claim that he did before the Appellate Court—that the prosecutor's "no conflicting witness" argument penalized the defendant for exercising his fifth amendment right not to testify because the defendant was the only person present when the alleged sexual assaults occurred and, thus, the only person who could contradict the victim's allegations. In response, the state argues that the prosecutor's remarks constituted proper commentary on the credibility of the victim. We agree with the state and conclude that the Appellate Court correctly determined that the prosecutor did not comment on the defendant's right not to testify.

As a preliminary matter, we note that defense counsel failed to preserve this claim when he failed to object to the prosecutor's closing argument. We nevertheless review the defendant's claim of prosecutorial misconduct because "a defendant who fails to preserve claims of prosecutorial misconduct need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-prong *Golding* test. . . . The reason for this is that the defendant in a claim of prosecutorial misconduct must establish that the prosecutorial misconduct was so serious as to amount to a denial of due process . . . . In evaluating whether the misconduct rose to this level, we consider the factors enumerated by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . These factors include the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case. . . . The consideration of the fairness of the entire trial through the *Williams* factors duplicates, and, thus, makes superfluous, a separate application of the *Golding* test." (Citations omitted; internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360–61, 897 A.2d 569 (2006).

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct

occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question . . . . As we have indicated, our determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, supra, 204 Conn. 540, with due consideration of whether that misconduct was objected to at trial." (Internal quotation marks omitted.) *State* v. *Warholic*, supra, 278 Conn. 361–62.

The fifth amendment to the United States constitution prohibits prosecutors from commenting at trial on a defendant's right not to testify.[4] *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). This rule is embodied in General Statutes § 54-84 (a), which provides in relevant part: "Any person on trial for crime . . . may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official . . . ."

"In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify? . . . Further, in applying this test, we must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. . . . [W]e also recognize that the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Even an indirect remark by the prosecuting attorney may violate a defendant's privilege against self-incrimination if it draws the jury's attention to the failure of the accused to testify. . . . Furthermore, [i]n determining the effect of the state's words on the jury, we may consider the effect they had on defense counsel." (Citations omitted; internal quotation marks omitted.) *State* v. *Rizzo*, 266 Conn. 171, 269–70, 833 A.2d 363 (2003).

We also have recognized that a prosecutor's "remarks concerning lack of contradiction [in the state's evidence] are forbidden only in the exceedingly rare case where the defendant alone could possibly contradict the government's testimony." (Internal quotation marks omitted.) *State* v. *Walker*, 206 Conn. 300, 307–308, 537 A.2d 1021 (1988), quoting *United States ex rel. Leak* v. *Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969), cert. denied sub nom. *Leak* v. *Follette*, 397 U.S. 1050, 90 S. Ct. 1388,

25 L. Ed. 2d 665 (1970); see also *United States* v. *Hasting*, 461 U.S. 499, 515 n.6, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983) (Stevens, J., concurring in judgment) ("[r]eference to uncontradicted portions of the [g]overnment's evidence is improper only when the statement will naturally and necessarily be construed by the jury to be an allusion to the defendant's failure to testify"). On this point, the Second Circuit Court of Appeals has held that, when "the prosecutor confines himself to arguing the strength of his case by stressing the credibility and lack of contradiction of his witnesses, we will not be astute to find in this a veiled comment on the defendant's failure to testify even if in practical fact, although not in theory, no one else could controvert them." *United States ex rel. Leak* v. *Follette*, supra, 1270.

In the present case, the defendant claims that the following remarks made by the prosecutor in her closing argument violated his fifth amendment right not to testify: "[The victim's] testimony about the abuse is consistent within itself because there's nothing that she said that couldn't have happened the way she reported it, and there's nothing that she said that conflicted with something someone else said about how it happened. . . . No person's testimony here gave you any reason to disbelieve [the victim], nor were you given any reason why the facts that she described could not have happened the way she described them. No person's testimony pointed to any reason why [the victim] would be lying or talked about a time when she did lie, or pointed to any motivation at all as to why [the victim] would falsely accuse [the defendant] of these crimes."

Viewing these remarks in the context in which they were made, we conclude that the jury would not have naturally and necessarily taken them to be a comment on the defendant's failure to testify. Rather, we believe that the most reasonable interpretation of the prosecutor's comments is that they were an argument that the jury should find the victim credible because of the consistencies in the state's evidence. For many reasons, it is clear that the focus of the prosecutor's comments was on the credibility of the victim. First, the prosecutor began her closing argument by explaining to the jurors how they should assess the credibility of each witness. Shortly thereafter, in making the challenged remarks, the prosecutor argued that the victim had no motive to lie and that the specificity of the victim's accusations gave them "more grain of truth," all of which pertains to whether the jury should have believed the victim's testimony. Thus, in this context, a reasonable jury would have understood the prosecutor's remarks as a commentary on the victim's veracity, not the defendant's silence. See *State* v. *Correa*, 241 Conn. 322, 359–60, 696 A.2d 944 (1997) (prosecutor's comment went toward weight of evidence rather than defendant's refusal to testify); see also *United States ex rel. Leak* v. *Follette*, supra, 418 F.2d 1270.

The prosecutor's attempts to persuade the jury that the victim was credible were particularly justifiable in light of the fact that the victim's credibility was the central issue in the case. The state did not introduce any physical evidence against the defendant, and the verdict therefore essentially rested on whether the jury believed the victim's testimony. Defense counsel had challenged the victim's credibility on cross-examination, and the trial court instructed the jurors that they could believe all, none or any part of any witness' testimony. Thus, it was necessary for the prosecutor to point out why the jury should find the victim credible in anticipation of defense counsel's attack on the victim's credibility in his own closing argument. See, e.g., *United States* v. *Monaghan*, 741 F.2d 1434, 1439 (D.C. Cir. 1984) ("[t]he prosecution cannot be shut off from fair comment on the strength of its own witness's testimony, particularly when it is relying principally on one witness and that witness has been severely challenged by the defense"), cert. denied, 470 U.S. 1085, 105 S. Ct. 1847, 85 L. Ed. 2d 146 (1985); see also *United States* v. *Robinson*, 485 U.S. 25, 34, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988) (prosecutor is not prohibited "from fairly responding to an argument of the defendant").

We also agree with the Appellate Court that the fact that the prosecutor never directly referred to the defendant in her comments, and the fact that defense counsel did not contemporaneously object to the allegedly improper comments, further supports the conclusion that the prosecutor's comments were within the constitutional limits prescribed by the fifth amendment.[5] *State* v. *Ruffin*, supra, 144 Conn. App. 403. Because we conclude that the prosecutor did not engage in any impropriety, we need not reach the issue of whether the defendant was deprived of his due process right to a fair trial. See, e.g., *State* v. *Warholic*, supra, 278 Conn. 361.

We reject the defendant's argument that the prosecutor's "no conflicting witness" argument was improper because the defendant was the only person who could refute the victim's accusations. Although it is true that the defendant was the only person who could contradict the victim's testimony with respect to the details of the alleged sexual assaults, there *were* witnesses other than the defendant who could have, and did, contradict other aspects of the victim's allegations. For instance, the defendant's wife testified that, during the period in which the alleged assaults occurred, she was in North Carolina with the couple's blue BMW whereas the defendant was in Connecticut with another vehicle, which contradicted the victim's testimony that the defendant had assaulted her while they were in his blue BMW. Additionally, the victim's mother, who corroborated the victim's testimony that the defendant twice picked her up in his car, could have contradicted the victim's timeline of events. Thus, this is not one of the

"exceedingly rare" cases in which the defendant alone could have contradicted the state's evidence. (Internal quotation marks omitted.) *State* v. *Walker*, supra, 206 Conn. 307. The fact that no one other than the defendant could contradict the details of the alleged assaults themselves is not dispositive. See *United States* v. *Stroman*, 500 F.3d 61, 66 (1st Cir.) (concluding that other witness could have contradicted "many elements . . . although admittedly not all" of defendant's confession that he had possessed handgun and hid it in building while he was alone), cert. denied, 552 U.S. 1050, 128 S. Ct. 674, 169 L. Ed. 2d 528 (2007).

Finally, we note that, although the prosecutor did not comment on the defendant's failure to testify, "[a] prosecutor does take a risk whenever the 'not contradicted' argument is made"; id.; and that prosecutors generally should avoid taking this unnecessary risk. See, e.g., *State* v. *Lemon*, 248 Conn. 652, 666, 731 A.2d 271 (1999). Whenever possible, prosecutors should use alternative means to emphasize the credibility of their witnesses and the strength of the state's evidence, and avoid language that could be misinterpreted as a veiled comment on the defendant's failure to testify.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] In accordance with our policy of protecting the privacy interest of victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Specifically, "the [trial] court sentenced [the defendant] to serve ten years in prison on the charge of sexual assault in the first degree in violation of § 53a-70 (a) (2) (five years mandatory minimum and eight years of special parole); seven years on the charge of risk of injury to a child in violation of § 53-21 (a) (2) (five years mandatory minimum); five years on the charge of risk of injury to a child in violation of § 53-21 (a) (1); five years on the charge of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A); and five years on the charge of risk of injury to a child in violation of § 53-21 (a) (2). All sentences were to be served concurrently." *State* v. *Ruffin*, supra, 144 Conn. App. 394.

[3] Judge McDonald also asserted that Byrne, the social worker, had "improperly vouched for [the victim's] testimony"; *State* v. *Ruffin*, supra, 144 Conn. App. 413 (*McDonald, J.*, concurring in part and dissenting in part); because the prosecutor had, in her closing argument, improperly referred to the fact that Byrne testified that the victim's allegations were supported. The majority treated this issue involving Byrne's testimony as a separate issue from the alleged prosecutorial misconduct and concluded that it was an unpreserved evidentiary claim. Id., 398–99. In his petition for certification to appeal, the defendant raised this evidentiary claim but we did not grant certification as to that issue. See *State* v. *Ruffin*, 310 Conn. 919, 76 A.3d 634 (2013). Accordingly, we decline to address this evidentiary issue.

[4] This prohibition is applicable to state prosecutions by virtue of the due process clause of the fourteenth amendment to the United States constitution. See *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

[5] We also agree with the Appellate Court that neither *State* v. *Rizzo*, supra, 266 Conn. 171, nor *State* v. *DeMartino*, 7 Conn. App. 292, 508 A.2d 809 (1986), supports the defendant's claim that the prosecutor's comments were improper. The Appellate Court correctly distinguished *Rizzo* from the present case on the basis that the prosecutor in *Rizzo*, unlike the prosecutor in the present case, directly referred to the fact that the defendant in *Rizzo* had not testified. *State* v. *Ruffin*, supra, 144 Conn. App. 400–401; see *State* v. *Rizzo*, supra, 270. Likewise, the Appellate Court correctly concluded that *DeMartino* is not analogous to the present case because, in *DeMartino*, the

prosecutor repeatedly posed to the jury questions that only the defendant in that case could answer, thereby highlighting his failure to testify. *State* v. *Ruffin*, supra, 401; see *State* v. *DeMartino*, supra, 295.

———————————————